*original* 

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Superior Court Of California
County of Los Angeles

**FEB 2 8 2014**

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Amber Hayes

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company;
ERIK H. GORDON, an individual, and Does 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

LOTTI BLUEMNER, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California, County of Los Angeles - Central District - Stanley Mosk Courthouse 111 N. Hill Street, Los Angeles, California 90012 | **CASE NUMBER:** *(Número del Caso):* **BC538111** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christian S. Molnar, Esq., (SBN 177665) 12400 Wilshire Boulevard, Suite 1180, Los Angeles, CA, 90025

| DATE: **FEB 2 8 2014** *(Fecha)* | **SHERRI R. CARTER** | Clerk, by *(Secretario)* **Amber Hayes** | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Exhibit A
Page 000020

90212
A6087

original

1   Christian S. Molnar, Esq. (SBN 177665)
    Ashley M. Hunt, Esq. (SBN 292083)
2   **CHRISTIAN S. MOLNAR LAW CORPORATION**
    12400 Wilshire Boulevard, Suite 1180
3   Los Angeles, California 90025
    Telephone: (310) 820-9900
4   Facsimile:  (310) 820-9926
    Email: christian@christiansmolnarlaw.com
5
    Attorneys for Plaintiff LOTTI BLUEMNER, an individual
6

**FILED**
Superior Court Of California
County Of Los Angeles

FEB 28 2014

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Amber Hayes

D36 Gregory Alarcon

7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA,
9            FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT
10

| | |
|---|---|
| 11  LOTTI BLUEMNER, an individual, | Case No.: |
| 12          Plaintiff, | **BC538111** |
| 13 | [Unlimited Jurisdiction] |
|         vs. | |
| 14 | **COMPLAINT FOR DAMAGES,** |
| ERGO MEDIA CAPITAL, LLC, a Delaware | **INJUNCTIVE RELIEF AND DEMAND** |
| 15  limited liability company; ERIK H. GORDON, an | **FOR JURY TRIAL** FOR: |
| 16  individual, and Does 1 through 20, inclusive, | |
| 17          Defendants. | (1) **DISCRIMINATION IN** |

(1)  **DISCRIMINATION IN
     VIOLATION OF FEHA (GOV.
     CODE §§ 12940);**
(2)  **AIDING AND ABETTING
     VIOLATIONS OF FEHA (GOV.
     CODE § 12940(i));**
(3)  **QUID PRO QUO HARASSMENT
     IN VIOLATION OF FEHA (GOV.
     CODE § 12940(j));**
(4)  **HOSTILE WORK ENVIRONMENT
     HARASSMENT IN VIOLATION
     OF FEHA (GOV. CODE § 12940(j));**
(5)  **FAILURE TO PREVENT
     DISCRIMINATION AND
     HARASSMENT IN VIOLATION
     OF FEHA (GOV. CODE § 12940(k));**
(6)  **WRONGFUL TERMINATION IN
     VIOLATION OF PUBLIC POLICY
     (CAL CONST. Art. 1, § 8);**
(7)  **INTENTIONAL INFLICTION OF
     EMOTIONAL DISTRESS,**
(8)  **NEGLIGENT INFLICTION OF**

1

**EMOTIONAL DISTRESS, AND**
(9) **UNFAIR BUSINESS PRACTICES
(CAL. BUS. PROF. CODE § 17200,
*et seq.*)**

    **COMES NOW** Plaintiff LOTTI BLUEMNER, an individual (hereinafter referred to as "Plaintiff BLUEMNER,") and alleges as follows:

<u>**PARTIES**</u>

    1.    Plaintiff BLUEMNER is now, and at all times mentioned herein was, an individual residing and doing business in the County of Los Angeles, State of California, and was a non-exempt employee of Defendants ERIK H. GORDON, an individual (hereinafter referred to as "Defendant GORDON,") and ERGO MEDIA GROUP, LLC, a Delaware limited liability company (hereinafter referred to as "Defendant ERGO,") (collectively "Defendants").

    2.    Plaintiff BLUEMNER is informed and believes, and based upon such information and belief, herein alleges that Defendant ERGO is, and at all times herein mentioned was, a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in the New York, and also conducting business in the County of Los Angeles, State of California through the residence of its principal, Defendant GORDON, in the City of Beverly Hills, County of Los Angeles, State of California, and employed and employs person in the same.

    3.    Plaintiff BLUEMNER is informed and believes, and based upon such information and belief, herein alleges that at all times herein mentioned, Defendant GORDON was an officer, manger, owner, member and/or principal of Defendant ERGO and at all times relevant hereto completely controlled and dominated the same, and

    4.    At all timers relevant hereto, Defendant GORDON maintained and, upon information and belief, does now maintain, a residence in the City of Beverly Hills, County of Los Angeles, State of California, and at all times relevant hereto resided in the same for significant portions of time.

    5.    Plaintiff BLUEMNER does not know the true names of Defendant Does 1 through 20, inclusive, and therefore sues them by those fictitious names.  Plaintiff BLUEMNER is informed and believes, and on the basis of that information and belief alleges, that each of those Defendants was in some manner legally responsible for the events and happenings alleged in this complaint and for Plaintiff

2

1  BLUEMNER's damages.  The names, capacities, and relationships of Does 1 through 20 will be alleged

2  by amendment to this complaint when they are known.

3       6.    Plaintiff BLUEMNER is informed and believes and based thereon alleges that at all times

4  mentioned herein, the Defendants, and Does 1 through 20, inclusive, and each of them, were the agents

5  and employees of each of the remaining Defendants, and each of them, in doing the acts alleged in this

6  complaint, were acting within the purpose and scope of said agency and employment.

7       7.    Plaintiff BLUEMNER is informed and believes and based thereon alleges that there

8  exists, and at all times herein mentioned there existed, a unity of interest and ownership between

9  Defendant ERGO, and Does 1 through 20, inclusive, and each of them, on the one hand, and Defendant

10  GORDON, on the other, such that any individuality and separateness between Defendant ERGO, and

11  Does 1 through 20, inclusive, and each of them, on the one hand, and Defendant GORDON, on the

12  other, has ceased, and thus Defendant ERGO, and Does 1 through 20, inclusive, and each of them, is the

13  *alter ego* of Defendant GORDON, in that Defendant GORDON, completely controlled, dominated,

14  managed, and operated the limited liability company defendant and intermingled their assets to suit the

15  convenience of Defendant GORDON, by placing the assets of Defendant ERGO, and Does 1 through 20,

16  inclusive, and each of them, in the name of Defendant GORDON, and vice-versa, in order to evade

17  payment of the obligations owed to creditors, including Plaintiff BLUEMNER.  Adherence to the fiction

18  of the separate existence of Defendant ERGO, and Does 1 through 20, inclusive, and each of them, from

19  Defendant GORDON, would permit an abuse of the limited liability company privilege and would

20  sanction fraud and promote injustice in that they have transferred assets between themselves, without

21  consideration, and to others, without regard to actual legal or equitable title.

22       8.    Each Defendant is sued individually and as an agent, conspirator, aider and abettor,

23  employee and/or control-person for each of the other Defendants, and the liability of each Defendant

24  arises from the fact that it has engaged in all or part of the unlawful acts, plans, schemes, or wrongs

25  complained of herein and was acting within the course and scope of said agency, partnership,

26  conspiracy, and employment.

27  ///

28  ///

3

## JURISDICTION AND VENUE

9.    The Court has personal jurisdiction over Defendants because they are residents of and/or doing business in the State of California and employed Plaintiff BLUEMNER and others in the State of California, and as such voluntarily subjected themselves to the laws of this state.

10.    This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to Article VI, § 10 of the California Constitution, California Code of Civil Procedure § 410.10, by virtue of the fact that this is a civil action in which the matter in controversy, exclusive of interest, exceeds TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00), and because each cause of action asserted arises under the laws of the State of California or is subject to adjudication in the courts of the State of California.  No part of this complaint is preempted by federal law or challenges conduct within any federal agency's exclusive domain, and adjudication thereof has not been statutorily assigned to any other court of jurisdiction.

11.    Venue is proper in this Court in accordance with California Code of Civil Procedure § 395(a) because Defendant GORDON resides in the City of Beverly Hills, County of Los Angeles County and Defendants GORDON and ERGO conduct business in the County of Los Angeles, and employed and continues to employ persons in this state.  Moreover, venue is proper pursuant to California Government Code § 12965(b), because the unlawful business practices complained of herein were committed within the County of Los Angeles and, further because, the County of Los Angeles is the county in which Plaintiff BLUEMNER would have continued to work, but for the unlawful business practices complained of herein.

## FACTUAL ALLEGATIONS

12.    Prior to accepting employment with Defendant ERGO, Plaintiff BLUEMNER worked as a model and also worked as an executive assistant and as a personal assistant.

13.    In or about April, 2012, Plaintiff BLUEMNER, by the invitation of Defendant GORDON, attended a Bruce Springsteen concert with Defendant GORDON.  During their evening together in April, 2012, Defendant GORDON offered to employ Plaintiff BLUEMNER as his Los Angeles based personal assistant at an annual salary of NINTY THOUSAND AND NO/100 DOLLARS ($90,000.00), which included an annual bonus based on performance, as well as full health insurance

4

1    coverage, including medical, dental and vision plans. On that same evening in April, 2012, Plaintiff

2    BLUEMNER accepted the offer of employment of Defendant GORDON.  Defendant GORDON

3    informed Plaintiff BLUEMNER on that same evening that he was dissatisfied with his current Los

4    Angeles based personal assistant, Ms. Rain Eventoff, but that he would need a couple of weeks to

5    transfer her to another position, and that after he accomplished the same, Plaintiff BLUEMNER could

6    commence work for Defendant GORDON and Plaintiff BLUEMNER agreed to the same.

7         14.    In or about the middle of the month of May, 2012, Plaintiff BLUEMNER commenced

8    work for Defendant GORDON as his Los Angeles based personal assistant.  In or about mid-May, 2012,

9    when Defendant GORDON came to Los Angeles, Defendant GORDON requested Plaintiff

10   BLUEMNER entertain his friends Trish and Rob by showing them around the Los Angeles Area

11   because Defendant GORDON was busy.  During that time, Plaintiff GORDON and several other persons

12   decided to take a trip to Las Vegas and Defendant GORDON suggested that Plaintiff BLUEMNER

13   attend as his "new" personal assistant.

14        15.    Between May, 2012 and September, 2012, Plaintiff BLUEMNER was paid directly by

15   Defendant GORDON via a series of wires of cash from his personal bank account.

16        16.    Beginning in or about September, 2012, Plaintiff BLUEMNER began to be paid via

17   direct deposit into her bank account from Defendant ERGO and was also enrolled into the employee

18   health benefit, life insurance and pension fund plans of Defendant ERGO.

19        17.    On or about May 26, 2012, while accompanying Defendant GORDON and others to Las

20   Vegas, as his personal assistant, Defendant GORDON and his guests procured various narcotics and

21   professional strippers at his hotel room.  Defendant GORDON insisted that Plaintiff BLUEMNER fill

22   the hot tub in the master suite of his hotel room and that she join Defendant GORDON, his three (3)

23   friends and the hired stripper in the hot tub.  Further, Defendant GORDON repeatedly directed Plaintiff

24   BLUEMNER to take off her bathing suit top while in the hot tub with Defendant GORDON, his friends,

25   and the stripper, and attempted to cajole her in to doing so by stating that "it was no big deal."  Plaintiff

26   BLUEMNER felt obligated to join her new boss, Defendant GORDON, in the hot tub and further feared

27   she would lose her new job with him if she didn't.  Plaintiff BLUEMNER did in fact get into the hot tub

28   in her bathing suit, but declined to remove her top.  Subsequently, after everyone exited the hot tub,

Defendant GORDON asked Plaintiff BLUEMNER to perform a strip dance for one of his friends in the bathroom of the master suite of Defendant GORDON's hotel room.  Plaintiff BLUEMNER declined Defendant GORDON's request.

18.    At the time of her hiring, Defendants ERGO and GORDON represented to Plaintiff BLUEMNER that her responsibilities as Defendant GORDON's Los Angeles based personal assistant would include the following:

    a.   Maintaining and overseeing the upkeep and condition of Defendant GORDON's residence in Beverly Hills, California;

    b.   Maintaining and overseeing the upkeep and condition of Defendant GORDON's vehicles in Los Angeles, including a Bentley, a BMW 750, and a Cadillac Escalade;

    c.   Overseeing the provision of personal services to Defendant GORDON in connection with his residence in Beverly Hills, California and his vehicles which he kept in Los Angeles, including, maids, repair persons, and automotive care;

    d.   Keeping his residence stocked with food, beverages, alcohol, and various other items;

    e.   Assisting in the coordinating of Defendant GORDON's schedule, appointments and meetings when he was in Los Angeles;

    f.   Making Defendant GORDON's residence and vehicles in Beverly Hills available for use by visiting guests, friends, family members, and invitees of Defendant GORDON;

    g.   Acting as a social liaison to Defendant GORDON, introducing him to persons involved in the nightlife scene in Los Angeles and obtaining invitations and admission to various social events, parties and nightclubs with prohibitive admissions policies;

    h.   Travelling with Defendant GORDON throughout the United States and internationally and acting as his personal assistant while travelling with him;

    i.   To make various personal purchases for Defendant GORDON and his friends using a credit card he supplied to her in her name, and

    j.   Discharging the ordinary duties of a personal assistant of Defendant GORDON in the conduct of his business;

6

19.    In reality, while Plaintiff BLUEMNER's responsibilities did at times include the above-described tasks, which Plaintiff BLUEMNER at all times relevant hereto, faithfully and diligently performed, Plaintiff BLUEMNER's responsibilities also included acting as Defendant GORDON's *entre-vouz* to the Los Angeles social and nightlife scene, using her social connections and knowledge of the Los Angeles social elite to help him procure admission to various nightclubs, parties, and social events to which Defendant GORDON might not otherwise have been aware, or to which he might not otherwise have been invited.  Plaintiff BLUEMNER's actual responsibilities also included accompanying Defendant GORDON and his friends and invitees to lunches and dinners at trendy restaurants, parties, bars, night clubs, and birthday parties in Los Angeles, Las Vegas, and occasionally New York City and/or Martha's Vineyard, as well as the Sundance Film Festival in Utah.  Plaintiff BLUEMNER's additional responsibilities also included assisting Defendant GORDON in pursuing girls he was romantically interested in, which included taking those girls on shopping trips to purchase personal items and gifts with the credit card he provided to Plaintiff BLUEMNER.  During one of these shopping trips, Plaintiff BLUEMNER, at Defendant GORDON's direction, spent tens of thousands of dollars.

20.    When Defendant GORDON was in-town in Los Angeles, and when Plaintiff BLUEMNER accompanied him to Las Vegas, New York, the Sundance Film Festival, and/or Martha's Vineyard as part of her employment, she was "on-duty" and/or "on-call" at all times.

21.    Additionally, after commencing employment with Defendants ERGO and GORDON, Plaintiff BLUEMNER quickly discovered that Defendant GORDON's main desire in employing Plaintiff BLUEMNER, an attractive and socially connected model, was to use her as "eye-candy" and as a "bait" to attract other attractive young women, who Defendant GORDON and his friends otherwise would not have been able attract on their own.  Defendant GORDON's apparent belief in utilizing Plaintiff BLUEMNER in this manner was that if other attractive women saw that he and his friends were with an attractive woman, these other women would be more receptive to his and his friends' overtures.  Essentially, Plaintiff BLUEMNER's role was to act as Defendant GORDON and his friends' "hot chick" wing-woman.

7

22.    After Plaintiff BLUEMNER commenced work for Defendants GORDON and ERGO, she also quickly discovered that regardless of the milieu, whether in Los Angeles or elsewhere, that Defendant GORDON's *modus operandi*, consisted of trading upon his father's (one of the founders of Angelo & Gordon) wealth, fame, connections, and political capital by taking meetings during the day with his and his father's wealthy and politically connected friends, celebrities, and politicians, and then partying, drinking, and consuming various illegal drugs each night, including, but not limited to, "ecstasy" (MDMA); cocaine; marijuana; "Molly" (MDMA); and "special k" (Ketamine), prescription drugs such as oxycotin, and others, as well as regularly engaging strippers and prostitutes. Quickly after the commencement of her employment, Defendant GORDON began directing Plaintiff BLUEMNER to pick up and pay for illegal drugs (with monies he provided), and accompany him and his friends to strip clubs. On one occasion, in Las Vegas, Defendant GORDON directed Plaintiff BLUEMNER to arrange for strippers to come over to hotel rooms purchased by Defendant GORDON and to facilitate his and his friends' engagement of prostitutes at their hotel rooms. In addition, Defendant GORDON routinely insisted that Plaintiff BLUEMNER "party" with Defendant GORDON and his friends as well be present when strippers and prostitutes were present.

23.    On many occasions while working for Defendants, Plaintiff BLUEMNER accompanied Defendant GORDON during his nights of drunken and drug-fueled debauchery and essentially "baby-sat" Defendant GORDON, who became so intoxicated at times during the nights and days of partying that he became susceptible to thievery and/or injury, monetarily or otherwise, by various unscrupulous persons and hangers-on who attempted to take advantage of Defendant GORDON's wealth while he was in an intoxicated, inebriated, and vulnerable state.  Plaintiff BLUEMNER often felt compelled to intervene, and in did in fact intervene, on multiple occasions to prevent such persons from taking advantage, financially and otherwise, of Defendant GORDON while he was unconscious and vulnerable.

24.    Almost immediately after she began her employment with Defendants, Plaintiff BLUEMNER was persistently subjected to unwanted flirtatious comments, references to her body parts, sexual advances, and occasional uninvited touching by Defendant GORDON. In addition, Defendant GORDON regularly insisted that Plaintiff BLUEMNER join him and his friends, as well as strippers, in various hot tubs and baths, asked her to remove her top while she was in the hot tubs and/or baths,

1   requested that she perform "strip dances" for his friends, asked her to take pictures of her naked breasts

2   so that he could show his friends, requested massages from her, and requested, on multiple occasions,

3   that she lay in bed with him while he was intoxicated and "high" on various illegal narcotics and

4   prescription drugs such as oxycotin.  In fact, Defendant GORDON's lewd requests to Plaintiff

5   BLUEMNER to send him pictures of her naked breasts increased in frequency after she became

6   pregnant.  While Plaintiff BLUEMNER declined some of these requests, she felt compelled to

7   unwillingly comply with some of Defendant GORDON's aforementioned appeals, out of fear that she

8   would otherwise lose her job.

9       25.   On occasion, including on his birthday on December 8, 2012, in New York, New York,

10   Defendant GORDON insisted upon doing lines of cocaine off of Plaintiff BLUEMNER's exposed

11   breasts in front of multiple persons.  Again, Plaintiff BLUEMNER reluctantly acquiesced to Plaintiff

12   GORDON's demands because she was afraid that if she didn't do so, she would lose her job.

13       26.   Further, Defendant GORDON would at times send inappropriate texts of a sexual and/or

14   scandalous nature to Plaintiff BLUEMNER.

15       27.   At all times during her employment with Defendants GORDON and ERGO, Plaintiff

16   BLUEMNER faithfully and diligently executed her "official" responsibilities as Defendant GORDON's

17   assistant, and many of her "unofficial" responsibilities as well, in order to maintain her employment and

18   her favorable salary and benefit package, including health insurance.

19       28.   During the course of her employment, Defendant GORDON routinely praised Plaintiff

20   BLUEMNER and her execution of her job duties both in writing, to her face, with others present, and to

21   mutual friends and acquaintances of theirs.  In addition, in December, 2012, after she had been working

22   for the Defendants for over seven (7) months, Defendant GORDON rewarded her for her exceptional job

23   performance by giving her a holiday/end-of-the-year cash bonus in the sum of EIGHT THOUSAND

24   TWO HUNDRED FIFTY AND NO/100 DOLLARS ($8,250.00).

25       29.   At no time between the commencement of her employment in early May, 2012, through

26   her unlawful termination in July, 2013, did Plaintiff BLUEMNER receive any warnings or disapprovals,

27   written or otherwise, of her job performance; nor was she ever subject to any disciplinary action of any

28   sort.

9

30.     In or about December, 2012, Plaintiff BLUEMNER became pregnant. Initially, Plaintiff BLUEMNER wasn't sure whether she would keep the baby or terminate her pregnancy, as she and the father of her baby were considering separating, and did eventually separate in March, 2013, and she was facing the challenges of being a single mother. Her main concern was her and her baby's financial security, and her ability to provide for her child. She determined that, if she was to continue with her pregnancy, she would require a larger apartment, with a second bedroom, which would necessitate an increase in her monthly rent from her current payment of ONE THOUSAND EIGHT HUNDRED AND NO/100 DOLLARS ($1,800.00). Additionally, it was her intention, if she proceeded with the pregnancy, to take only a very brief leave of absence from her employment with Defendants, and immediately hire a nanny so she could return to her job with Defendants. Plaintiff BLUEMNER realized that she could only afford a nanny and a larger apartment if she kept her employment with Defendants GORDON and ERGO and if her position of employment as Defendant GORDON's personal assistant was secure.

31.     In March of 2013, Plaintiff BLUEMNER, without initially disclosing her pregnancy to Defendant GORDON, met with Defendant GORDON at his residence in Beverly Hills, California for the specific purpose of discussing her long-term employment security with Defendants. During their meeting, she informed Defendant GORDON that she was thinking of leasing a larger and significantly more expensive apartment, and inquired of Defendant GORDON whether he was happy with her job performance and whether she had long-term employment security with Defendants for the foreseeable future. Defendant GORDON responded favorably, and stated to Plaintiff BLUEMNER that he was "very pleased" with her performance of her employment duties, that she was doing an "amazing job," that her job was absolutely secure, and that he intended to continue employing her for the foreseeable future and that she had long-term employment security with the Defendants. Plaintiff BLUEMNER thanked Defendant GORDON for his reassurances and informed him of her intention to immediately lease a significantly more expensive apartment.

32.     Reassured by Defendant GORDON's responses but wanting to have additional security, Plaintiff BLUEMNER thereafter requested that James Heckman, a mutual friend of her's and Defendant GORDON's, speak directly with Defendant GORDON while he was still in Los Angeles and pose the

1    same questions to him as were asked in her meeting with Defendant GORDON.  The mutual friend,

2    James Heckman, thereafter arranged to meet Defendant GORDON in Los Angeles at the Sawyer Club in

3    or around March, 2013.  During their meeting, Mr. Heckman posed the same or substantially similar

4    questions to Defendant GORDON that Plaintiff BLUEMNER had posed to him days earlier and

5    Defendant GORDON's responses were essentially identical; he praised Plaintiff BLUEMNER's

6    performance and voiced his intention to continue to employ her for the foreseeable future.  Thereafter,

7    Mr. Heckman reported back to Plaintiff BLUEMNER the good news regarding her job performance and

8    the reaffirmation of her long-term job security with the Defendants.

9         33.    In reliance upon the affirmative representations and affirmations of Defendant GORDON

10   to both Plaintiff BLUEMNER and their mutual friend, James Heckman, in their separate meetings with

11   Defendant GORDON in March, 2013, Plaintiff BLUEMNER decided to commit to her pregnancy, and

12   the financial obligations it would entail, and lease the larger and more expensive apartment in

13   anticipation of the arrival of her child.  Plaintiff BLUEMNER signed a lease for her new apartment for a

14   one (1) year term on March 26, 2013 which term expired on March 31, 2014.  The monthly base rent for

15   hew new apartment was THREE THOUSAND TWO HUNDRED FIFTY and NO/100 DOLLARS

16   ($3,250.00).  In addition to the increased monthly base rent for the new apartment, Plaintiff

17   BLUEMNER was required to also pay for utilities, trash, and water charges, and an increased renters

18   insurance rate, which brought the monthly total for her new apartment to nearly FOUR THOUSAND

19   AND NO/100 DOLLARS ($4,000.00).

20        34.    Shortly thereafter, at the end of March, 2013, Plaintiff BLUEMNER informed Defendant

21   GORDON that she was pregnant.  Defendant GORDON's initial reaction was that he was decidedly

22   underwhelmed with this news, and did not respond in an overly warm or positive manner.  While

23   Defendant GORDON belatedly congratulated Plaintiff BLUEMNER on her pregnancy, almost

24   immediately, Plaintiff BLUEMNER experienced a marked change in treatment from Defendant

25   GORDON.  He began to exclude her from events and activities that he previously always insisted that

26   she participate in as part of her employment.  For instance, whenever Defendant GORDON came to Los

27   Angeles, Plaintiff BLUEMNER and her friends that she introduced to Defendant GORDON would be

28   invited out to dinner with Defendant GORDON, which would almost always be followed by partying

1 | and night-clubbing.  Once she disclosed that she was pregnant, Defendant GORDON would invite

2 | Plaintiff BLUEMNER's friends out to dinner with him and his friends, but would not invite Plaintiff

3 | BLUEMNER.  While Defendant GORDON would tell her that he would "meet up" with her later, he

4 | would invariably fail to do so.  In addition, Defendant GORDON had invited Plaintiff BLUEMNER to

5 | accompany him on a long-planned trip to Las Vegas in May of 2013, to celebrate the one (1) year

6 | wedding anniversary of his and BLUEMNER's mutual friends who had been married there during

7 | Plaintiff BLUEMNER's and Defendant GORDON's first trip there together as his employee in May,

8 | 2012.  By contrast, now, Defendant GORDON did not take Plaintiff BLUEMNER with him to Las

9 | Vegas in May of 2013.  Mutual friends, who were present on the trip, said that Defendant GORDON

10 | commented on the reasons for Plaintiff BLUEMNER's absence, reporting that Defendant GORDON

11 | stated that "Las Vegas was no place for a pregnant girl," especially, when the attendees were planning on

12 | staying up "partying for forty-eight (48) hours straight."

13 | 35.   On or about the end of June or early July, 2013, Defendant GORDON left to travel to

14 | Iberian isle of Ibiza, a trip on which it would not have been uncommon for Plaintiff BLUENMER to

15 | have joined his entourage as part of her regularly expected employment obligations.  However, on this

16 | occasion, Defendant GORDON traveled to Ibiza without Plaintiff BLUEMNER.  Again, Plaintiff

17 | BLUEMNER was informed by mutual friends that according to Defendant GORDON, he didn't want to

18 | bring a "pregnant chick" to Ibiza.  By then, Plaintiff BLUEMNER, who was more than seven (7) months

19 | pregnant, and visibly showing, and therefore no longer the suitable "eye candy" that Defendant

20 | GORDON required, and instead had become a hindrance to Defendant GORDON's party lifestyle.

21 | 36.   Beginning in May, 2013, though now largely excluded by Defendant GORDON from his

22 | social calendar and activities, Plaintiff BLUEMNER continued to faithfully perform all of her other

23 | responsibilities for Defendants.  In addition, Plaintiff BLUEMNER took on the additional task of

24 | assisting Defendant GORDON in searching for a new residence in Los Angeles that he would either

25 | purchase or rent.  Plaintiff BLUEMNER diligently assisted Defendant GORDON in the search for his

26 | new residence.  She spent countless hours on a near daily basis searching internet listings of suitable

27 | residences and meeting with several brokers on a non-exclusive basis, as required by Defendant

28 |

Exhibit A
Page 000032

1   GORDON, looking at and reviewing potential properties for Defendant GORDON to either purchase or

2   rent.

3       37.    In or about late May, 2013 or early June, 2013, Defendant GORDON began pursuing a

4   new girl, Malea.  At Defendant GORDON's direction, Plaintiff BLUEMNER took her on several multi-

5   thousand dollar shopping sprees, as well as made Defendant GORDON's Beverly Hills residence and

6   vehicles available to her whenever she requested the same.

7       38.    On or about June, 2013, Defendant GORDON, Malea, and others, departed for Ibiza

8   where they remained until their return on or about July, 2013.  Prior to their departure, Defendant

9   GORDON and Malea informed Plaintiff BLUEMNER that upon their return, Malea would be moving

10  into Defendant GORDON's residence in Beverly Hills, California.  Defendant GORDON directed

11  PLAINTIFF BLUEMNER to perform several tasks to prepare the residence to accommodate this

12  change, including purchasing a storage unit for Malea.  Plaintiff BLUEMNER diligently performed for

13  Defendants all the actions Defendant GORDON requested in connection with Malea moving into his

14  Beverly Hills residence.

15      39.    Immediately after his return to the United States from his vacation in Ibiza, and on July

16  11, 2013, Defendant GORDON sent an email to Plaintiff BLUEMNER--who at the time was six (6)

17  weeks away from giving birth to her baby--informing her that he was terminating her, *effective*

18  *immediately*, and that her last paycheck would be issued on Monday, July 15, 2013.  Further, in this

19  same communication, Defendant GORDON notified Plaintiff BLUEMNER that her health insurance

20  benefits would also be terminated as of the end of that month.  In his termination letter, Defendant

21  GORDON falsely accused Plaintiff BLUEMNER of "stealing" from him by purportedly conspiring with

22  multiple real estate agents to receive a "kick-back" on the commission payable to them in connection

23  with his potential purchase of a new residence in Los Angeles, California if the sale was consummated.

24  He also falsely accused her of allowing the hot water at his Beverly Hills residence to lapse for four (4)

25  days and failing to fix the garage door opener to his residence in his Cadillac Escalade.  In addition, he

26  accused her of failing to perform minor various duties such as keeping the air-conditioning in his

27  Beverly Hills residence at a too-warm temperature (Plaintiff BLUEMNER kept the Beverly Hills condo

28  air conditioning thermostat at 70 degrees, as directed), and of failing to change one (1) light bulb thereat

13

1   prior to his latest arrival in Los Angeles.  It is noteworthy that the ceilings in Defendant GORDON's

2   condo are approximately fifteen (15) feet tall, and require a ladder to replace, which Plaintiff

3   BLUEMNER required help in doing in her late-stage pregnancy.  Further, he complained that she had

4   driven his Escalade one one occasion without his advance permission, and thereby put additional

5   mileage on the vehicle (despite previously giving her permission to do so, and, in fact, *requiring* her to

6   do so as part of her employment duties in maintaining the vehicle), and failed to "re-program" the same

7   (even though it required a professional re-programmer, who had not been retained for that purpose).

8   Finally, Defendant GORDON falsely accused of her of buying herself personal items at the apple store

9   with the credit card he issued to her.

10      40.   None of the false allegations made by Defendant GORDON were truthful or accurate,

11   other than: (1) that she was unable to replace one (1) light-bulb in his residence due to the physical

12   limitations created by the advanced stage of her pregnancy, and (2) that she had on a single occasion, on

13   a weekend day, used his Escalade without telling him in advance, although he had on numerous previous

14   occasions told her to freely use his vehicles, had never before complained of her doing so, and had, in

15   fact, required her to drive the same as part of her job duties to maintain, care for, and keep in good

16   working order all of Defendant GORDON's Los Angeles vehicles.

17      41.   Plaintiff BLUEMNER, while in shock at the "out-of-the-blue" termination letter, as well

18   as it's timing - just six (6) weeks before her pregnancy delivery due date - immediately contacted the real

19   estate agents she had been working on Defendant GORDON's behalf, and asked them to contact

20   Defendant GORDON and inform him that she had never requested, sought, or agreed to accept any

21   "kick-back" from any of them in connection with his potential purchase or rental of a new residence in

22   Los Angeles, California.  Each of the agents immediately confirmed that no such request had been made

23   by Plaintiff BLUEMNER, and confirmed that no agreement regarding the same had ever been entered

24   into, and further agreed that they would immediately contact Defendant GORDON informing him of the

25   same.

26      42.   Plaintiff BLUEMNER is informed and believes, and based on that information and belief,

27   herein alleges, that each of the real estate agents immediately contacted Defendant GORDON and

28   informed him that Plaintiff BLUEMNER had never requested any "kick-back" of their potential

1   commissions and had further never agreed to accept any such "kick-back" from them.  Despite such

2   corroboration, Plaintiff BLUEMNER's employment was never reinstated by Defendant GORDON.

### FIRST CAUSE OF ACTION

**(For Unlawful Discharge/Discrimination in Violation of FEHA (Gov. Code §§ 12940(a)) Against**

**Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H.**

**GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

7   43.    Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in

8   paragraphs 1 through 42, inclusive, *supra,* and incorporate the same herein as if fully set forth.

9   44.    At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20,

10   inclusive, and each of them, regularly employed five (5) or more persons bringing Defendants, and Does

11   1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and*

12   *Housing Act* ( "FEHA"), which proscribe certain enumerated forms of discrimination.

13   45.    Plaintiff BLUEMNER adequately exhausted all of her administrative remedies under

14   FEHA and obtained a "right to sue" letters from the Department of Fair Employment and Housing

15   against Defendants, and Does 1 through 20, inclusive, and each of them.  A true and correct copy of the

16   "right to sue" letter Plaintiff BLUEMNER obtained from the Department of Fair Employment and

17   Housing is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

18   46.    Plaintiff BLUEMNER was discriminated against by Defendants, and Does 1 through 20,

19   inclusive, and each of them, on the basis of Plaintiff BLUEMNER's sex and/or gender as prohibited

20   under FEHA.  Specifically, Plaintiff BLUEMNER suffered adverse employment actions by and through

21   the Defendants, and Does 1 through 20, inclusive, and each of them, including, but not limited to her

22   unlawful termination, for the sole reason of her sex, her gender, and the fact that she was pregnant.

23   47.    During the time leading up to her unlawful termination, Defendants, and Does 1 through

24   20, inclusive, and each of them, took actions consistent with the fact that her termination was based on

25   her pregnancy, and not on any other lawful reason, including, but not limited to:

26   a. Defendant GORDON, immediately upon learning of Plaintiff BLUEMNER's pregnancy,

27   began severely circumscribing her job duties and responsibilities, such as excluding her

28

1    from events and activities that he previously always insisted that she participate in as part

2    of her employment;

3        b.  Immediately upon notifying Defendant GORDON of her pregnancy, being unnecessarily

4    restricted in performing her previous job duties of traveling with Defendant GORDON on

5    his vacations as his personal assistant;

6        c.  Immediately upon notifying Defendant GORDON of her pregnancy, being entirely

7    restricting her from his "social calendar" and evening social activities, such as dinner

8    with mutual friends;

9        d.  Defendant GORDON's commenting, to mutual friends, that Plaintiff BLUEMNER could

10   no longer attend such events and engagements, or travel with Defendant GORDON on

11   vacation, because such places and events were "not places for a pregnant chick."

12       e.  Terminating her a mere six (6) weeks before she was to give birth, and attempting to

13   terminate her health and medical insurance immediately, such that her medical expenses

14   related to her pregnancy and the birth of her child would no longer be covered by

15   Defendants;

16       f.  Arguing that her termination was based upon dishonest interactions and "thievery"

17   relating to a real estate transaction, which was quickly proven to be false, and also

18   attempting to claim her termination arose out of the non-performance and/or poor

19   performance of various trifling and negligible employment duties such as failure to

20   replace a light bulb and allegedly not calling a plumber quickly enough.

21       48.    None of the false allegations made by Defendant GORDON were accurate, nor grave

22   enough to warrant such a dramatic swing in Defendant GORDON's opinion of her job performance,

23   which evidences the fact that such "reasons" were only a ruse to mask the true reason for her

24   termination –her pregnancy.

25       49.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their

26   willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER sustained and continues to

27   sustain substantial losses in earnings and other benefits.

28

16

Exhibit A
Page 000036

50.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

51.     Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

52.     Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys' fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

## SECOND CAUSE OF ACTION

### (For Aiding and Abetting Discrimination in Violation of FEHA (Gov. Code §§ 12940(i)) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)

53.     Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 52, inclusive, *supra,* and incorporate the same herein as if fully set forth.

54.     At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed five (5) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA"), which proscribe certain enumerated forms of discrimination.

55.     Plaintiff BLUEMNER has adequately exhausted all of her administrative remedies under FEHA and obtained "right to sue" letters from the Department of Fair Employment and Housing against Defendants, and Does 1 through 20, inclusive, and each of them.  A true and correct copy of the "right to sue" letter Plaintiff BLUEMNER obtained from the Department of Fair Employment and Housing is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

17

56.     Defendants, and Does 1 through 20, inclusive, and each of them, was aware of, and encouraged, aided, abetted, incited, compelled, and/or coerced the unlawful employment actions set forth in the above paragraphs, as proscribed the provisions of the California *Fair Employment and Housing Act* ( "FEHA"), Section 12940(i).  Specifically, Plaintiff BLUEMNER suffered adverse employment actions by and through the Defendants, and Does 1 through 20, inclusive, and by and through those encouraged or compelled by them, or tacitly and actively encouraged by them, including, but not limited to, her unlawful termination, for the sole reason of her sex, her gender, and the fact that she was pregnant.

57.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses in earnings and other benefits.

58.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

59.     Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

60.     Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys' fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

///

///

///

///

18

### THIRD CAUSE OF ACTION

**(For Quid Pro Quo Sexual Harassment on the basis of Sex or Gender in Violation of FEHA (Gov. Code §§ 12940(j)) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

61.     Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 60, inclusive, *supra,* and incorporate the same herein as if fully set forth.

62.     At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed one (1) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ("FEHA") proscribing harassment.

63.     Plaintiff BLUEMNER has adequately exhausted all of her administrative remedies under FEHA and obtained "right to sue" letters from the Department of Fair Employment and Housing against Defendants, and Does 1 through 20, inclusive, and each of them.  A true and correct copy of the "right to sue" letter Plaintiff BLUEMNER obtained from the Department of Fair Employment and Housing is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

64.     Plaintiff BLUEMNER suffered continual, pervasive, and unwanted sexual advances on the basis of Plaintiff BLUEMNER's sex and gender by and through the actions and/or statements of Defendants, and Does 1 through 20, inclusive, and each of them, during the course of her employment to which she was either expressly or impliedly expected to suffer and/or acquiesce as a condition of her employment, such that her continued employment was either expressly or impliedly dependent on such acquiescence, as prohibited under FEHA.  Plaintiff BLUEMNER was made or induced to perform sexual or suggestive actions demanded or requested of her by Defendants, and Does 1 through 20 inclusive, and each of them, out of fear that non-performance of such actions would lead to her termination.  Specifically, Plaintiff BLUEMNER was asked, and in some instances did reluctantly perform out of fear that she would otherwise lose her job, sexually based actions, including, but not limited to:

Exhibit A
Page 000039

a.     Being asked to join Defendant GORDON, together with his friends, and/or strippers, in the hot tub or bath;

b.     Being asked remove her top in the bath or hot tub, when she joined Defendant GORDON and others in the same; and asking or pressuring her into complying when she first denied the request;

c.     Requested to perform "strip dances" for Defendant GORDON's friends; and

d.     Being asked to take pictures of her naked breasts so that Defendant GORDON could show his friends;

e.     Required to allow Defendant GORDON to do lines of "Coke" off of Plaintiff BLUEMNER's naked breasts in front of multiple persons.

e.     Requested to give massages to Defendant GORDON;

f.     Being asked, on multiple occasions, to lay in bed with Defendant GORDON.

65.     As a proximate result of Plaintiff's refusal to perform, and/or inability to further comply with the requests of Defendants and Does 1 through 20, inclusive, and each of their, requests due to her advancing pregnancy, Plaintiff BLUEMNER was terminated from her employment.

66.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses in earnings and other benefits.

67.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

68.     Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California. Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

69.     Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys' fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### FOURTH CAUSE OF ACTION

### (For Hostile Work Environment Sexual Harassment on the basis of Sex or Gender in Violation of FEHA (Gov. Code §§ 12940(j)) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)

70.     Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 69, inclusive, *supra,* and incorporate the same herein as if fully set forth.

71.     At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed one (1) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA") proscribing harassment.

72.     Plaintiff BLUEMNER has adequately exhausted all of her administrative remedies under FEHA and obtained "right to sue" letters from the Department of Fair Employment and Housing against Defendants, and Does 1 through 20, inclusive, and each of them.  A true and correct copy of the "right to sue" letter Plaintiff BLUEMNER obtained from the Department of Fair Employment and Housing is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

73.     Plaintiff BLUEMNER suffered severe and pervasive sexual harassment on the basis of her sex, her gender, and on the basis of her pregnancy, in violation of FEHA during the course of her employment with Defendants such that it altered and interfered with her working conditions and created a hostile and abusive work environment and insufferable working conditions.  Such sexual harassment was directed both at Plaintiff BLUEMNER herself and at others in her presence, and was so severe and pervasive that permeated her workplace and substantially interfered with her working environment.

74.     During the course of her employment, Defendants, and Does 1 through 20, inclusive, and each of them, took actions of a sexually harassing nature towards Plaintiff BLUEMNER and in her

21

Exhibit A

Page 000041

1    presence which caused and continued the existence of an oppressive and hostile work environment.

2    Specifically, Plaintiff BLUEMNER witnessed or was victim of actions or comments of a sexually

3    harassing nature, including but not limited to:

4         a.  Regularly requiring Plaintiff BLUEMNER, as part of her job duties as his professional

5             assistant, to procure professional strippers and/or hookers and prostitutes for Defendant

6             GORDON and/or his friends in hotel rooms, and to facilitate his and his friends access to

7             prostitutes and strippers;

8         b.  Insisting Plaintiff BLUEMNER join Defendant GORDON, his friends, and/or strippers in

9             hot tubs or baths;

10         c.  Requesting or directing Plaintiff BLUEMNER to remove her top in the hot tub, together

11             with Defendant GORDON, his friends, and strippers, and attempting to cajole or pressure

12             her into complying;

13         d.  Requesting or directing Plaintiff BLUEMNER to perform a "strip tease" dance for

14             Defendant GORDON's in the bathroom of a hotel master suite;

15         e.  Regularly requiring Plaintiff BLUEMNER, as part of her job duties as his professional

16             assistant, to accompany him to bars, restaurants, and clubs to help him pursue women, act

17             as "eye-candy" and as "bait" to attract other women to their party;

18         f.  Requiring Plaintiff BLUEMNER to accompany Defendant GORDON and his friends to

19             strip clubs;

20         g.  Insisting that Plaintiff BLUEMNER be present and "party" with Defendant GORDON

21             and his friends when strippers and prostitutes were present;

22         h.  Insisting on doing lines of "Coke" off of Plaintiff BLUEMNER's naked breasts in front

23             of multiple persons.

24         i.  Regularly requiring Plaintiff BLUEMNER, as part of her job duties as his professional

25             assistant, to take the women that Defendant GORDON was romantically interested in on

26             shopping sprees, or otherwise giving them access to Defendant GORDON's assets,

27             properties, amenities in Los Angeles, California;

28

j.  Persistently and continuously subjecting Plaintiff BLUEMNER to unwanted flirtatious comments, sexually charged advances, references to her body parts, and even unwanted touching or contact from Defendant GORDON;

k.  On occasion requesting Plaintiff BLUEMNER take photos of her naked breasts so that Defendant GORDON could show his friends.  Such requests increased in frequency once Plaintiff BLUEMNER became pregnant, as did comments relating to her breasts.

l.  Requesting that Plaintiff BLUEMNER touch Defendant GORDON, or give him massages.

m.  Requesting that she lay in bed with Defendant GORDON

n.  At times sending Plaintiff BLUEMNER inappropriate, scandalous, or sexually charged text messages.

Such actions were so severe and/or pervasive so as to materially alter Plaintiff BLUEMNER's work environment and render it intolerable.

75.  As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

76.  Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

77.  Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys' fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

///

///

23

## FIFTH CAUSE OF ACTION

**(For Failing to Prevent Discrimination and/or Harassment on the basis of Sex or Gender in Violation of FEHA (Gov. Code §§ 12940(k)) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

78.   Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 77, inclusive, *supra,* and incorporate the same herein as if fully set forth.

79.   At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed five (5) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA"), which proscribe certain enumerated forms of discrimination and harassment.

80.   Plaintiff BLUEMNER has adequately exhausted all of her administrative remedies under FEHA and obtained "right to sue" letters from the Department of Fair Employment and Housing against Defendants, and Does 1 through 20, inclusive, and each of them.  A true and correct copy of the "right to sue" letter Plaintiff BLUEMNER obtained from the Department of Fair Employment and Housing is attached hereto as **Exhibit "A"** and incorporated herein by reference as though fully set forth.

81.   Plaintiff BLUEMNER suffered severe and pervasive sexual harassment on the basis of her sex, her gender, and on the basis of her pregnancy, in violation of FEHA during the course of her employment with Defendants.

82.   Defendants, and Does 1 through 20, inclusive, and each of them, failed to take all reasonable steps necessary to prevent discrimination from happening or occurring in violation of Gov. Code § 12940(k).

83.   As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses in earnings and other benefits.

84.   As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation,

Exhibit A
Page 000044

1  emotional distress and mental and physical pain and anguish, all to her damage in a sum according to

2  proof.

3        85.    Plaintiff BLUEMNER is informed and believes and based thereon alleges that the

4  aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free

5  from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil

6  Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish

7  and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

8        86.    Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys'

9  fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with

10  FEHA § 12965(b).  Plaintiff BLUEMNER is presently unaware of the precise amount of these expenses

11  and fees and prays leave of court to amend this complaint when the amounts are more fully known.

12  **SIXTH CAUSE OF ACTION**

13  **(For Wrongful Termination in Violation of Public Policy (Cal. Const., Art. 1, § 8) Against**

14  **Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H.**

15  **GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

16        87.    Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in

17  paragraphs 1 through 86, inclusive, above and incorporate the same herein in full.

18        88.    At all times mentioned in this complaint, Article I, Section 8 of the California

19  Constitution, proscribing, *inter alia*, discrimination on the basis of sex, was in full force and effect and

20  was binding on Defendants.  In addition, pursuant to the FEHA, it is against public policy and unlawful

21  to terminate an employee because of the employee's sex and/or gender.

22        89.    Plaintiff BLUEMNER is informed and believes and based thereon alleges that her sex

23  and/or her gender was the motivating factor in Defendants, and Does 1 through 20, inclusive, and each

24  of their decision to terminate her.  Such discrimination is in violation of the public policy of the State of

25  California as reflected in the California Constitution, Article I, Section 8, and additionally reflected in

26  FEHA's proscription of the same, and has resulted in damages and injury to Plaintiff BLUEMNER as

27  alleged herein.

28

25

90.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their willful, knowing and intentional violations of FEHA, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses in earnings and other benefits.

91.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

92.     Plaintiff BLUEMNER is informed and believes and based thereon alleges that the aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

## SEVENTH CAUSE OF ACTION

### (For Intentional Infliction of Emotional Distress Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)

93.     Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through 92, inclusive, *supra,* and incorporate the same herein in full.

94.     Defendant, and Does 1 through 20, inclusive, and each of them, persisted in subjecting Plaintiff BLUEMNER to unwelcome verbal, visual and physical conduct of a sexual nature in the workplace, as alleged hereinabove, in a manner that was outrageous, offensive, heinous and beyond the standards of decency tolerated in a civilized society.

95.     Defendants, and Does 1 through 20, inclusive, and each of them intended to cause Plaintiff BLUEMNER emotional distress and/or acted with reckless disregard of Plaintiff BLUEMNER's rights, under the California Constitution and FEHA, to be free of such outrageous and unlawful conduct and with reckless disregard of the probably that Plaintiff BLUEMNER would suffer emotional distress, knowing that Plaintiff BLUEMNER was present as the victim of the conduct when it occurred.

1     96.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their

2    conduct, Plaintiff BLUEMNER has suffered severe emotional distress and Defendants, and Does 1

3    through 20, inclusive, and each of their conduct was a substantial factor in causing Plaintiff

4    BLUEMNER's severe emotional distress.

5     97.     As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their

6    intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation,

7    emotional distress and mental and physical pain and anguish, all to her damage in a sum according to

8    proof.

9     98.     Plaintiff BLUEMNER is informed and believes and based thereon alleges that the

10   aforesaid acts directed towards her were carried out with a conscious disregard of her right to be free

11   from such illegal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil

12   Code § 3294 entitling Plaintiff BLUEMNER to punitive damages in an amount appropriate to punish

13   and set an example of Defendants, and Does 1 through 20, inclusive and each of them.

14   **EIGHTH CAUSE OF ACTION**

15   **(For Negligent Infliction of Emotional Distress Against Defendants ERGO MEDIA CAPITAL,**

16   **LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1**

17   **through 20, inclusive, and each of them)**

18    99.     Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in

19   paragraphs 1 through 98, inclusive, *supra*, and incorporate the same herein in full.

20    100.   Defendant, and Does 1 through 20, inclusive, and each of them, persisted in subjecting

21   Plaintiff BLUEMNER to unwelcome verbal, visual and physical conduct of a sexual nature in the

22   workplace, as alleged hereinabove, in a manner that was outrageous, offensive, heinous and beyond the

23   standards of decency tolerated in a civilized society.

24    101.   Defendants, and Does 1 through 20, inclusive, breached a duty to Plaintiff BLUEMNER

25   to, as her employer, refrain from such conduct and protect her from being subjected to the same while in

26   their employ.  Defendants, and Does 1 through 20, inclusive, and each of them, acted intentionally or

27   without regard to a reasonably knowable risk of harm to Plaintiff BLUEMNER and her rights, the

28   California Constitution and FEHA, to be free of such harm.

27

102.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their conduct, Plaintiff BLUEMNER has suffered severe emotional distress and Defendants, and Does 1 through 20, inclusive, and each of their conduct was a substantial factor in causing Plaintiff BLUEMNER's severe emotional distress.

103.    As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their intentional violations of FEHA, Plaintiff BLUEMNER has suffered and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage in a sum according to proof.

## NINTH CAUSE OF ACTION

**(For Unfair Business Practices (Cal. Bus. Prof. Code §§ 17200, *et seq.*) Against Defendants ERGO MEDIA CAPITAL, LLC, a Delaware limited liability company; ERIK H. GORDON, an individual, and Does 1 through 20, inclusive, and each of them)**

104.    Plaintiff BLUEMNER repeats, re-pleads and re-alleges the allegations contained in paragraphs 1 through103, inclusive, *supra*, and incorporate the same herein in full.

105.    Plaintiff BLUEMNER brings this action to recover unpaid wages, on behalf of herself, all other similarly situated, and the general public.

106.    The Unfair Competition Law, Business and Professions Code Section 17200 *et seq.*, defines unfair competition to include any "unfair," "unlawful" or "deceptive" business practice, and provides for injunctive and restitutionary relief for violations.

107.    Defendants, and Does 1 through 20, inclusive, and each of them, have committed numerous unfair, unlawful or deception business practices as further alleged hereinabove, including but not limited to: terminating Plaintiff BLUENMNER for an unlawful and discriminatory purpose, wrongfully terminating Plaintiff in contravention of public policy, aiding and abetting in the unlawful discharge of Plaintiff, subjecting Plaintiff to a hostile and oppressive working environment by exposing Plaintiff to in appropriate and sexual comments and actions which pervaded her working conditions, requiring, either expressly or impliedly, Plaintiff to engage or participate in acts of a sexual nature as a condition of her continued employment, failing to prevent sexual harassment, engaging in or allowing to

1   exist the intentional infliction of emotional distress on Plaintiff BLUEMNER, and in engaging in or

2   allowing to exist the negligent infliction of emotional distress on Plaintiff BLUEMNER.

3          108.   The actions of Defendants, and Does 1 through 20, inclusive, and each of them, detailed

4   herein against Plaintiff BLUEMNER constitute unfair, unlawful and deceptive business practices, and

5   further, constitute actions for which restitutionary relief is available.

6          109.   As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their

7   actions, Plaintiff BLUEMNER has suffered injury in fact and lost money or property.

8          110.   Plaintiff BLUEMNER is informed and believes and based thereon alleges that

9   Defendants, and Does 1 through 20, inclusive, and each of them, continue to engage in the practices

10   described herein and are continuing and will continue to benefit financially from these unlawful and

11   unfair practices unless enjoined by this Court from doing so.

12          111.   Plaintiff BLUEMNER is informed, believes, and based thereon alleges, that the unlawful

13   and unfair business practices conducted by Defendants, and Does 1 through 20, inclusive, and each of

14   them, are ongoing and present a threat and likelihood of continuing discrimination against Plaintiff

15   BLUEMNER and other members of the general public.  Accordingly, Plaintiff BLUEMNER seeks

16   declaratory and injunctive relief and restitution, as permitted under the Act.

17          112.   As a proximate result of Defendants, and Does 1 through 20, inclusive, and each of their

18   unfair business practices, Plaintiff BLUEMNER has sustained and continues to sustain substantial losses

19   in earnings and other benefits.

20          113.   Plaintiff BLUEMNER has incurred and continues to incur legal expenses and attorneys'

21   fees and costs, including expert witness fees, entitling Plaintiff BLUEMNER to relief in accordance with

22   California Code of Civil Procedure § 1021.5.  Plaintiff BLUEMNER is presently unaware of the precise

23   amount of these expenses and fees and prays leave of court to amend this complaint when the amounts

24   are more fully known.

25                              **PRAYER FOR RELIEF**

26          **WHEREFORE**, Plaintiff BLUEMNER prays for judgment against Defendants, and Does 1

27   through 20, inclusive, and each of them as follows:

28

---

29

1.    At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed five (5) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA"), which proscribe certain enumerated forms of discrimination.

2.    At all applicable times mentioned in the Complaint, Defendants, and Does 1 through 20, inclusive, and each of them, regularly employed one (1) or more persons bringing Defendants, and Does 1 through 20, inclusive, and each of them, within the provisions of the California *Fair Employment and Housing Act* ( "FEHA") proscribing specific types of harassment.

### As to the First through Third Causes of Action

1.    For restitution of all monies due Plaintiff BLUEMNER including back pay, front pay, lost employment benefits and other compensation, and other special damages according to proof;

2.    For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

3.    For exemplary and punitive damages;

4.    For all applicable injunctive relief as allowed by law;

5.    For an award of interest, including prejudgment interest, at the legal rate;

6.    For an award of attorneys' fees;

7.    For costs of suit incurred, and

8.    For such other and further relief as the Court may deem appropriate.

### As to the Fourth Cause of Action

1.    For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

2.    For exemplary and punitive damages;

3.    For all applicable injunctive relief as allowed by law;

4.    For an award of interest, including prejudgment interest, at the legal rate;

5.    For an award of attorneys' fees;

6.    For costs of suit incurred, and

7.    For such other and further relief as the Court may deem appropriate.

Exhibit A
Page 000050

### As to the Fifth Cause of Action

1. For restitution of all monies due Plaintiff BLUEMNER including back pay, front pay, lost employment benefits and other compensation, and other special damages according to proof;

2. For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

3. For exemplary and punitive damages;

4. For all applicable injunctive relief as allowed by law;

5. For an award of interest, including prejudgment interest, at the legal rate;

6. For an award of attorneys' fees;

7. For costs of suit incurred, and

8. For such other and further relief as the Court may deem appropriate.

### As to the Sixth Cause of Action

1. For restitution of all monies due Plaintiff BLUEMNER including back pay, front pay, lost employment benefits and other compensation, and other special damages according to proof;

2. For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

3. For exemplary and punitive damages;

4. For all applicable injunctive relief as allowed by law;

5. For an award of interest, including prejudgment interest, at the legal rate; and

6. For such other and further relief as the Court may deem appropriate.

### As to the Seventh Cause of Action

1. For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

2. For exemplary and punitive damages;

3. For all applicable injunctive relief as allowed by law;

4. For an award of interest, including prejudgment interest, at the legal rate; and

5. For such other and further relief as the Court may deem appropriate.

///

Exhibit A
Page 000051

### As to the Eighth Cause of Action

1.    For general damages to compensate Plaintiff BLUEMNER for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

2.    For all applicable injunctive relief as allowed by law;

3.    For an award of interest, including prejudgment interest, at the legal rate; and

4.    For such other and further relief as the Court may deem appropriate.

### As to the Ninth Cause of Action

1.    For an order finding that Defendants, and Does 1 through 20, inclusive, and each of them, violated California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.*;

2.    For an award to Plaintiff BLUEMNER of all actual, consequential, and incidental damages subject to proof at trial, including but not limited to the amount of wages illegally withheld, all damages for wages not promptly paid, penalties pursuant to statute, and all premium pay, civil penalties, and other penalties owed to Plaintiff BLUEMNER;

3.    For an award to Plaintiff BLUEMNER of interest on all monies owed from the day such money was due to Plaintiff BLUEMNER;

4.    For an order requiring Defendants to pay restitution to Plaintiff BLUEMNER due to Defendants unlawful and/or unfair activities pursuant to Business and Professions Code sections 17200, *et seq.*;

5.    For permanent injunctive relief requiring the Defendants to cease and desist from all unlawful and/or unfair activities pursuant to Business and Professions Code sections 17200, *et seq.*,

6.    For an award of attorneys' fees;

7.    For costs of suit incurred, and

8.    For such other relief as this Court may deem proper.

Dated: February 28, 2014                    **Christian S. Molnar Law Corporation**

Christian S. Molnar, Esq., attorneys for
Plaintiff LOTTI BLUEMNER

Exhibit A
Page 000052

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: February 28, 2014

**Christian S. Molnar Law Corporation**

Christian S. Molnar, Esq., attorneys for
Plaintiff LOTTI BLUEMNER

33

# Exhibit "A"

02/28/2014



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GOVERNOR EDMUND G. BROWN JR.

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING          DIRECTOR PHYLLIS W. CHENG

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TTY 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Sep 26, 2013

Lotti Bluemner
9663 Santa Monica Boulevard, #162
Beverly Hills, CA 90210

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 166125-69796
Right to Sue: Bluemner / Ergo Media Capital, LLC, Erik Gordon

Dear Lotti Bluemner:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Sep 26, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

**This letter is also your Right to Sue notice.** According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commision (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Enclosures

cc: Ergo Media Capital, LLC Gordon

Exhibit A
Page 000055

Original

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Christian S. Molnar, Esq. (SBN 177665)
CHRISTIAN S. MOLNAR LAW CORPORATION
12400 Wilshire Boulevard, Suite 1180
Los Angeles, California, 90025
 TELEPHONE NO.: (310) 820-9900   FAX NO.: (310) 820-9926
ATTORNEY FOR *(Name):* Plaintiff LOTTI BLUEMNER, an individual

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles, Central District
 STREET ADDRESS: 111 N. Hill Street
 MAILING ADDRESS: 111 N. Hill Street
 CITY AND ZIP CODE: Los Angeles, California 90012
 BRANCH NAME: Central District - Stanley Mosk Courthouse

CASE NAME:
Lotti Bluemner, an individual v. Ergo Media Captial, LLC, etc., et al.

FILED
Superior Court Of California
County Of Los Angeles

FEB 28 2014

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
       Amber Hayes

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC538111 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☑ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):*  nine (9)
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 28, 2014
Christian S. Molnar, Esq.
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

Exhibit A
Page 000056

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Exhibit A
Page 000057

*Original*

| SHORT TITLE: Lotti Bluemner v. Ergo Media Captial, LLC, etc., et al. | CASE NUMBER **BC538111** |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 5 ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check <u>one</u> Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION
LASC Approved 03-04

| SHORT TITLE: Lotti Bluemner v. Ergo Media Captial, LLC, etc., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☒ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

Exhibit A

| SHORT TITLE: Lotti Bluemner v. Ergo Media Captial, LLC, etc., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

Exhibit A
Page 000060

| SHORT TITLE: Lotti Bluemner v. Ergo Media Captial, LLC, etc., et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON:  Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☑2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>132 South Maple Drive, Penthouse #4 |
|---|---|
| CITY:<br>Beverly Hills | STATE:<br>California | ZIP CODE:<br>90212 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: February 28, 2014

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5.  Payment in full of the filing fee, unless fees have been waived.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM**<br>**AND STATEMENT OF LOCATION** | Local Rule 2.0<br>Page 4 of 4 |
|---|---|---|

Exhibit A
Page 000061