UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOTTI BLUEMNER, an individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ERGO MEDIA CAPITAL, LLC, a ) <br> Delaware limited liability company; ERIK ) <br> H. GORDON, an individual; and DOES 1- ) <br> 20, inclusive, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> ) | CASE NO. CV 15-01392 MMM (AJWx) <br><br> ORDER GRANTING PLAINTIFF'S <br> MOTION TO REMAND |

On February 28, 2014, Lotti Bluemner filed this action in Los Angeles Superior Court against Ergo Media Capital, LLC ("Ergo"), Erik H. Gordon (collectively, "defendants"), and certain fictitious defendants.[1] The complaint alleged nine claims based on Bluemner's purportedly wrongful termination by defendants.[2] On February 26, 2015, defendants removed the action to this court,

---

[1] Notice of Removal ("Removal"), Docket No. 1 (Feb. 26, 2015), Exh. A ("Complaint").

[2] Complaint.

invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[3]

On March 30, 2015, Bluemner filed a motion to remand, asserting that defendants' removal was untimely.[4] Defendants oppose the motion.[5] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the motion appropriate for decision without oral argument. The hearing calendared for June 15, 2015 is therefore vacated, and the matter taken off calendar.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bluemner alleges that Gordon is the sole owner of ErGo Media.[6] In April 2012, Gordon offered Bluemner a position as his Los Angeles-based personal assistant with a salary of $90,000 per year plus a performance bonus and full health insurance coverage.[7] She accepted the offer the day it was made.[8] As Gordon's Los Angeles-based assistant, Bluemner's tasks included maintaining and overseeing his Beverly Hills residence and vehicles, making Gordon's property and vehicles available to friends and guests, acting as a social liaison at events, traveling domestically and internationally with Gordon, making purchases for Gordon and his friends with a credit card in her name Gordon supplied, and various other personal assistant duties.[9] The complaint asserts that some of Bluemner's primary duties, in addition to those above, included procuring admission to nightclubs, attending social events with his friends, and helping to obtain and entertain women in

---

[3]Removal.

[4]Motion to Remand ("Motion"), Docket No. 20 (Mar. 30, 2015).

[5]Opposition to Motion to Remand ("Opposition"), Docket No. 25 (May 22, 2015).

[6]Complaint, ¶ 2.

[7]*Id*., ¶ 13.

[8]*Id*.

[9]*Id*., ¶ 18(a-j).

2

whom that was romantically interested.[10] Bluemner maintains she was hired as "eye-candy" or "bait" for other attractive women so that they would notice Gordon and his friends.[11] Once employed, she asserts, she was subjected to "unwanted flirtatious comments, references to her body parts, sexual advances, and occasional uninvited touching by . . . Gordon."[12]

Bluemner alleges that she was always on call when Gordon was in town.[13] Throughout the employment relationship, Bluemner attended various events and made various trips with Gordon as his personal assistant. On many occasions, at his direction, she purportedly obtained prostitutes and narcotics to facilitate his partying; she also allegedly "baby-sat" him when he was intoxicated or vulnerable to people seeking to take advantage of him.[14] On approximately May 26, 2012, Bluemner traveled to Las Vegas with Gordon and his guests; the group purportedly procured strippers and narcotics, and Gordon asked Bluemner several times to take off her top and perform a strip dance. She asserts she refused to do so.[15] On December 8, 2012, out of fear that she would lose her job, Bluemner acquiesced to Gordon's request that she allow him to do "lines of cocaine off . . . [her] exposed breasts in front of multiple persons."[16] As a result of this and other incidents during her employment, Bluemner alleges she was humiliated and suffered emotional distress and physical pain and anguish.[17]

The complaint asserts that Gordon often praised Bluemner for her work, and that he paid her

---

[10]*Id.*, ¶ 19.

[11]*Id.*, ¶ 21.

[12]*Id.*, ¶ 24. Gordon purportedly requested that Bluemner perform strip dances, take off her top in the hot tub, take photographs pictures of her naked breasts, and lie in bed with him while he was "high." (*Id.*, ¶ 24.)

[13]*Id.*, ¶ 20.

[14]*Id.*, ¶¶ 22–23.

[15]*Id.*, ¶¶ 17–18.

[16]*Id.*, ¶ 25.

[17]*Id.*, ¶ 75.

3

an end-of-the-year bonus of $8,250.00. She contends that, prior to her termination, she did not receive any negative feedback from Gordon.[18] When Bluemner learned in December 2012 that she was pregnant, she sought reassurances from Gordon – apparently without disclosing that she was pregnant – that she would have security and long-term employment as his personal assistant.[19] He purportedly stated that he was "very pleased," that she was doing an "amazing job," and that her job was secure for the foreseeable future.[20] To confirm his review, Bluemner requested that a mutual friend meet with him to inquire about Bluemner's performance; Gordon purportedly gave the friend a similar positive review.[21] In reliance on Gordon's statements, Bluemner "committed to her pregnancy," and leased a larger apartment at a higher rent to accommodate the birth of her child.[22]

At the end of March 2013, Bluemner told Gordon she was pregnant; she asserts that the was she was treated changed immediately; she was purportedly excluded from social events and trips in which she had typically been included.[23] Nonetheless, Bluemner allegedly continued to perform other assistant duties, e.g., working with real estate agents to secure Gordon a new residence.[24]

On July 11, 2013, after he returned from a trip abroad on which Bluemner was not invited, Gordon emailed Bluemner to say that he was terminating her, effective immediately, and that he would issue her last paycheck on July 15, 2013, six weeks prior to her due date.[25] He advised Bluemner that her health benefits would be terminated at the end of July, and accused her of

---

[18]*Id.*, ¶¶ 28–29.

[19]*Id.*, ¶ 30.

[20]*Id.*, ¶ 31.

[21]*Id.*, ¶ 32.

[22]*Id.*, ¶ 33. Her new apartment and the corresponding charges amounted to $4,000 per month. (*Id.*)

[23]*Id.*, ¶ 34. Mutual friends had stated that Gordon commented "Las Vegas was not place for a pregnant girl." (*Id.*)

[24]*Id.*, ¶ 36.

[25]*Id.*, ¶ 39.

numerous acts of misconduct, including stealing by conspiring to receive a "kick-back" on his potential purchase of a his new home, failing properly to maintain his residence and vehicles, and misuse of the credit card he had given her.

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If at any time before final judgment[, however,] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

A plaintiff may seek remand if the removal is untimely. 28 U.S.C. § 1446(b) "provides two thirty-day windows during which a case may be removed – during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005) (quoting 28 U.S.C. § 1446(b)).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and

1  "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first
2  instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d
3  662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir.
4  1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction
5  means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing
6  *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v.
7  Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)). Doubts as to removability must be
8  resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*,
9  319 F.3d 1089, 1090 (9th Cir. 2003).

**B.     Whether the Court Should Remand This Action to Los Angeles Superior Court**

Bluemner contends that defendants' removal was untimely. Defendants counter (1) that they were not properly served and that their default was thereafter entered, making it impossible for them to remove. It is well settled that a court lacks power to exercise jurisdiction over a defendant, and hence the thirty-day removal period does not begin to run, "in the absence of [ ] service (or waiver of service by the defendant)." *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999).

Where a defendant has not been properly served, courts look to whether the defendant has waived service under state law in gauging the timeliness of removal. See *Jenkins v. MTGLQ Investors*, 218 Fed. Appx. 719, 724 (10th Cir. Feb. 9, 2007) (Unpub. Disp.) ("Because, as the district court concluded, MTGLQ was never properly served with a copy of the summons . . . absent waiver of service . . . the thirty-day period for filing a notice of removal set forth in 28 U.S.C. § 1446(b) never started to run"); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc*., No. 02 CIV. 6438 (SAS), 2002 WL 31509881, *3 (S.D.N.Y. Nov. 6, 2002) ("The key question . . . is whether defendants waived formal service of process"); see also *Russell v. Gordon*, No. CV-12-0514-JLQ, 2012 WL 4793651, *4 (E.D. Wash. Oct. 9, 2012) ("The question Plaintiff presents is whether the removal clock was nevertheless started where the defendant has, by its conduct, waived service"); *Marina Bay Towers Urban Renewal II, L.P. v. City of N. Wildwood*, No. CIVA 09-369 NLH KMW,

6

2009 WL 2568203, *3 (D.N.J. Aug. 13, 2009) ("It appears that plaintiff has never formally served the City, [but] the City's appearance at the injunction hearing . . . may constitute a waiver of service under state law").

California Code of Civil Procedure § 1014 provides, in relevant part, that a defendant generally appears in an action "when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, moves for reclassification pursuant to Section 403.040, gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant." CAL. CODE CIV. PROC. § 1014. This list is not exclusive, however. *Hamilton v. Asbestos Corp.*, 22 Cal.4th 1127, 1147 (2000). A defendant who invokes the authority of the court or who affirmatively seeks relief available only if the court has jurisdiction over the defendant is deemed to have made a general appearance. *Factor Health Management v. Superior Court*, 132 Cal.App.4th 246, 250 (2005). "[W]hether a party engaged in an act that amounts to an appearance is 'fact specific.'" *Air Mach. Com SRL v. Superior Court*, 186 Cal.App.4th 414, 426 (2010).

Here, defendants filed motions to set aside their defaults under California Code of Civil Procedure § 473 on October 6, 2014.[26] Although the basis of the motion was improper service, defendants did not assert jurisdictional objections at the time they sought this relief. To the contrary, Gordon – the sole owner/member of ErGo – stated in his declaration that the purpose of the motion was "to request that the default against [him] be set aside and that [he] be allowed to defend th[e] action on the merits."[27] By failing to move to quash service at the time they sought to have their defaults set aside, defendants' "appearance in the section 473 matter was a general appearance because [t]he[y] only contested the merits of the default and failed to raise any jurisdictional objection." *Venuta v. Loban*, No. A098143, 2002 WL 31598847, *2 (Cal. App. Nov. 20, 2002)[28]

---

[26]Removal, Exhs. T and X (Motions to Set Aside Default).

[27]*Id.*, Exh. U (Declaration of Erik Gordon).

[28]"Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive

(citing *366-388 Geary St., L.P. v. Superior Court*, 219 Cal.App.3d 1186, 1193 (1990)).[29] "[A] general appearance is the equivalent of personal service of summons for jurisdictional purposes, dispensing with any need to effect such service and curing defective service or other lack of notice." See *366-386 Geary St.*, 219 Cal.App.3d at 1193; see also CAL. CIV. PROC. CODE § 410.50(a) ("A general appearance by a party is equivalent to personal service of summons on such party"). Thus, defendants waived any jurisdictional defect arising from defective service on October 6, 2014; assuming the other prerequisites to removal were met by that date, the thirty day removal period was triggered.

Defendants maintain, however, they could not file a notice of removal after their defaults were entered in state court and before the defaults had been set aside. There is *no* authority for this proposition. To the contrary, "the Ninth Circuit does not prohibit a defendant from removing a case, assuming that removal is timely, even if default judgment has been previously entered against the defendant. Therefore, an entry of default against a [ ] defendant does not abrogate [d]efendants' right to removal." *Ali v. Downey Sav. & Loan*, No. CV 10 3798 GAF FMO, 2010 WL 2720505, *1 (C.D. Cal. July 7, 2010) (citing *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963) ("The federal court takes the case as it finds it on removal and treats everything that occurred in the state court as though it had been validly rendered in the federal proceeding")); cf. *Kizer v. Sherwood*, 311

---

authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

[29]Section 418.10(d) expressly provides that a motion to quash service, if joined with a § 473 motion, will not be deemed a general appearance by the defendant. CAL. CODE CIV. PROC. § 418.10(d) ("No default may be entered against the defendant before expiration of his or her time to plead, and no motion under this section, or under Section 473 or 473.5 when joined with a motion under this section, or application to the court or stipulation of the parties for an extension of the time to plead, shall be deemed a general appearance by the defendant"). Section 418.10(d) would be superfluous if filing a § 473 motion based on defective service were not deemed a general appearance. Cf. *Bouchard v. Superior Court*, No. B251658, 2014 WL 2703624, *5 (Cal. App. June 16, 2014) ("As discussed, pursuant to the plain language of section 418.10, subdivision (d), Bouchard was permitted to join his jurisdictional motion with one that recognized the court's authority to set aside his default without being deemed to have made a general appearance").

F.Supp. 809, 811 (M.D. Pa. 1970) ("there is no question that under the general removal statute, 28 U.S.C. § 1441-1450, it is within the power of a Federal Court to set aside a default judgment rendered by a State Court before removal of a particular case").

Furthermore, it has long been the rule that a removal constitutes a special appearance that does not waive a defendant's right to contest service of process. See *Barnard v. Watson*, No. 14-CV-0024-TOR, 2014 WL 2573238, *1 n. 1 (E.D. Wash. June 9, 2014) ("Defendants did not waive this challenge [(to service of process)] by removing the case to this Court," citing *Wabash W. Ry. v. Brow,* 164 U.S. 271, 279 (1896) (holding that the removal of a case from state court to federal court constitutes a special appearance and does not waive the defendant's right to contest service of process)); *Maplebrook Townhomes LLC v. Greenbank*, No. 10-CV-03688-LHK, 2010 WL 4704472, *4 (N.D. Cal. Nov. 12, 2010) (same). Thus, the fact defendants were still in default on October 6, 2014 is of no consequence.

Finally, defendants argue that even if they could have removed while in default, and even if they waived service of process as of October 6, 2014, their removal was timely because neither of § 1446(b)'s 30-day removal windows was triggered. The court does not agree. Defendants assert that Bluemner is a California citizen based on allegations in the complaint; because they rely exclusively on Bluemner's allegations in this regard, the case stated by the initial pleading was removable, and first of § 1446's third-day removal periods was triggered as soon as defendants made a general appearance on October 6, 2014. See *Harris*, 425 F.3d at 694 ("the first thirty-day period for removal in 28 U.S.C. § 1446(b) only applies if the case stated by the initial pleading is removable on its face"). Stated differently, in the notice of removal, defendants rely exclusively on facts alleged in the complaint to establish Bluemner's citizenship. Bluemner pled that she "is now, and at all times mentioned herein was, an individual residing and doing business in the County of Los Angeles, State of California."[30] Defendants assert that because Bluemner lived in Los Angeles from May 2012 to July 11, 2013, she is a California domiciliary for purposes of diversity jurisdiction.[31]

---

[30]Complaint, ¶ 1.

[31]Removal, ¶ 47.

9

Whether or not this suffices to plead her citizenship (which it does not), the information on which defendants rely was stated on the face of the complaint.[32]

Defendants also argue that Bluemner's complaint failed adequately to allege their citizenship as it pled only that Gordon maintained a residence in Beverly Hills, California where he "resided . . . for significant portions of time."[33] Although this is insufficient to plead either Gordon's or ErGo's citizenship, a defendant is "presumed to know its own citizenship." *Leon v. Gordon Trucking, Inc.*, _ F.Supp.3d _, 2014 WL 7447701, *5 (C.D. Cal. Dec. 31, 2014); *Traeger Grills E., LLC v. Traeger Pellet Grills, LLC*, No. 11-CV-536-AC, 2011 WL 5439330, *5 (D. Or. Nov. 9, 2011) ("Because a defendant is presumed to know its own citizenship and common sense dictates that the defendant is in the best position to determine citizenship, Defendant's request for more than thirty days to determine its own citizenship is inconsistent with Congress's strict thirty-day limitation for removal as outlined in § 1446(b)"); *Cretian v. Job1USA, Inc.*, No. 09-CV-770-ST, 2009 WL 4841039, *1 (D. Or. Dec. 11, 2009) ("[d]efendant 'is presumed to know its own citizenship; indeed it is in the best position to know it' for purposes of removal"); *Villareal v. Demarco*, No. CV090452 PA (VBKx), 2009 WL 279111, *2 (C.D. Cal. Feb. 5, 2009) ("Defendants assert that the Complaint did not allege the citizenship of the Defendants, and that they did not learn there was complete diversity until Plaintiff's counsel faxed them proofs of service for both Defendants. However, Defendants are in the best position to know their own citizenship"); *KDY, Inc. v. Hydroslotter Corp.*, No. 08-4074 SC, 2008 WL 4938281, *4 (N.D. Cal. Nov. 17, 2008) ("In the present case, Defendants have not argued that they belatedly discovered their own geographical locations. Rather, they have instead attempted to use the language of § 1446(b) as a justification for their own neglect in timely removing their case; although courts are not to look to the subjective knowledge of a defendant, Defendants here admit that they did not learn their own geographical location from any of Plaintiff's papers. This is not surprising, as courts surely can presume that a

---

[32]Defendants also contend that ErGo payroll records list Bluemner's "home address" as "being continuously in Los Angeles." (Removal, ¶ 47.) That adds nothing to the allegations in the complaint, however, and hence does not render the first § 1446 removal window inapplicable.

[33]Complaint, ¶ 4.

10

defendant is aware of various basic personal facts, including the location of one's citizenship, without delving into the prohibited area of a defendant's subjective knowledge"); *Dugdale v. Nationwide Mut. Fire Ins. Co.,* No. CV05-0138, 2006 WL 335628, *6 (E.D. Va. Feb. 14, 2006) ("[A]lthough . . . a defendant need not investigate a plaintiff's citizenship, certainly a defendant is responsible for knowing its own citizenship, and could not ignore such only to later claim that subsequent documents revealed to the defendant its own citizenship"); *Day v. Zimmer, Inc.*, 636 F.Supp. 451, 453 (N.D.N.Y. 1986) (finding that, even if plaintiff misidentifies a defendant's address, "obviously defendant is in the best position to know its residence for diversity purposes").

The fact that the amended complaint did not adequately allege defendants' citizenship therefore does not relieve defendants of the obligation to remove in a timely fashion. Because defendants are charged with knowledge of their own citizenship, and because they rely solely on information alleged in the complaint to plead Bluemner's citizenship, the thirty day removal clock was triggered on the case stated in the complaint on October 6, 2014, when defendants waived any objection to service of process by making a general appearance. Defendants filed their notice of removal more than four months later, on February 26, 2015.[34] The removal was therefore untimely, and the court must grant Bluemner's motion to remand.

### C. Whether Bluemner is Entitled to Attorneys' Fees and Costs

Bluemner seeks attorneys' fees under 28 U.S.C. § 1447(c) in the event of remand. "Under 28 U.S.C. § 1447(c), '[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'" *Federal Home Loan Mortg. Corp. v. Lettenmaier*, No. CV–11–165–HZ, 2011 WL 1297960, *1 (D. Or. Apr. 5, 2011) (quoting 28 U.S.C. § 1447(c)). "'Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.'" *Id.* (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

"Removal is not objectively unreasonable solely because the removing party's arguments

---

[34] Removal at 1.

11

lack merit and the removal is ultimately unsuccessful." *Id.* (citing *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)). "Rather, the court should assess 'whether the relevant case law clearly foreclosed the defendant's basis of removal' by examining the 'clarity of the law at the time of removal.'" *Id.* (quoting *Lussier*, 518 F.3d 1066); see also *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999–1000 (9th Cir. 2006) ("Del Taco's state court petition to confirm the arbitration award contained only one state law cause of action; it did not contain any federal claim that could provide the basis for a § 1441(c) removal. Joinder of a federal claim and a claim for removal of a state court action in a federal complaint cannot effect a § 1441(c) removal. There being no objectively reasonable basis for removal, the district court did not abuse its discretion in awarding attorney's fees under § 1447(c) to Del Taco").

Bluemner contends attorneys' fees are warranted because defendants' removal clearly lacked merit, and constituted an impermissible interference with her right to be the master of her complaint. The court declines to award attorneys' fees. Although not persuasive, the court does not find defendants' arguments in support of removal so objectively unreasonable that they warrant an award of attorneys' fees. See *Lussier*, 518 F.3d at 1065 (noting that while "[t]here is no question that [the defendant's] arguments were losers[,] . . . removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted"). While the court does not agree that a defendant in default cannot remove, or that defendants' decision to move to set aside their defaults did not constitute a general appearance under California law, the principles of law governing these issues are not immediately obvious, and the court cannot say that defendants' arguments were so objectively unreasonable that they merit an award of attorneys' fees to Bluemner.

### III. CONCLUSION

For the reasons stated, the court grants Bluemner's motion to remand, and directs the clerk

12

1 | to remand the action to Los Angeles Superior Court forthwith.  Bluemner's request for attorneys'
2 | fees and costs is denied.

4 | DATED: June 4, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

13